IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


SCOTT PHILLIP HENRETTY,
      Petitioner,

vs.                              Case No.:  3:14cv177/LAC/EMT

JULIE L. JONES,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and relevant portions of the state court record (ECF No. 10).  Petitioner filed a reply (ECF No. 27).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 10).[2]  Petitioner was charged in the Circuit Court in and for Escambia

---

[1] Julie L. Jones succeeded Michael Crews as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 10).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

County, Florida, Case No. 2009-CF-3426, with one count of fleeing or attempting to elude a law enforcement officer in an agency vehicle with siren and lights activated at high speed or in a manner demonstrating wanton disregard for the safety of persons or property (Count 1), and one count of destroying, damaging, or altering electronic monitoring equipment (Count 2) (Ex. C at 1). Following a jury trial, he was found guilty as charged (Ex. C at 30, Ex. D). On December 1, 2010, Petitioner was sentenced to fifteen (15) years in prison, with pre-sentence jail credit of 500 days, on Count 1, and a consecutive term of five (5) years in prison on Count 2 (Ex. C at 36–43).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D11-113 (Ex. C at 51). Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. E). Petitioner filed a pro se initial brief (Ex. F). The First DCA affirmed the judgment per curiam without written opinion on November 21, 2011, with the mandate issuing January 26, 2012 (Exs. G, J). Henretty v. State, 77 So. 3d 184 (Fla. 1st DCA 2011) (Table). Petitioner did not seek further review.

On March 8, 2012, Petitioner filed a motion for reduction or modification of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. K). The state circuit court did not rule on the motion within the time period set forth in Rule 3.800(c); therefore, the motion was deemed denied. *See* Formolo v. State, 130 So. 3d 749 (Fla. 2d DCA 2014) ("Under rule 3.800(c), the trial court had ninety days to rule on this motion, after which the motion would be deemed denied.").

On January 15, 2013, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. M at 1–34). In an order rendered May 8, 2013, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion "within the time provided by Florida Rule of Criminal Procedure 3.850" (*id.* at 35–36). Petitioner filed an amended motion on May 17, 2013 (*id.* at 37–71). The state circuit court summarily denied it on September 11, 2013 (*id.* at 72–107). Petitioner appealed the decision to the First DCA, Case No. 1D13-5391 (*id.* at 121–22). The First DCA affirmed the judgment per curiam without written opinion on February 7, 2014, with the

mandate issuing April 22, 2014 (Exs. N, Q).  Henretty. State, 134 So. 3d 953 (Fla. 1st DCA 2014) (Table).

Petitioner filed the instant federal habeas action on April 7, 2014 (ECF No. 1).

## II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no

Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* <u>Henderson v. Campbell</u>, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  <u>Williams</u>, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* <u>Bell v. Cone</u>, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'"  <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting <u>Williams</u>, 529 U.S. at 411) (citing <u>Harrington v. Richter</u>, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* <u>Gill</u>, *supra* at 1291 (citing <u>Richter</u>).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* <u>Richter</u>, 562 U.S. at 102; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in

determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that

he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

A.    Ground One:  "Petitioner was denied effective assistance of counsel when counsel failed to adequately argue and preserve a motion for judgment of acquittal, in violation of the Petitioner's Sixth and Fourteenth Amendment rights of the United States Constitution."

Petitioner acknowledges that trial counsel made a motion for judgment of acquittal ("JOA") on the fleeing and eluding charge, but he contends counsel argued only that there was insufficient evidence that Petitioner was traveling at a high rate of speed, and failed to argue that there was insufficient evidence of the identity of the driver of Petitioner's car (ECF No. 1 at 4–7).  Petitioner contends there is a reasonable probability the trial court would have granted the motion for JOA if counsel had argued that there was insufficient evidence identifying him as the driver (*id.*).  Petitioner further contends that counsel's alleged error prejudiced him on appeal, because the argument was not preserved (*id.*).  Petitioner asserts he raised this claim in his Rule 3.850 motion (*id.* at 5).

Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law; therefore, he is not entitled to federal habeas relief (ECF No. 10 at 7–12).

1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, Petitioner is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."

Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial, not on appeal. *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.  Federal Review of State Court Decision

Petitioner raised this claim as Ground One in his amended Rule 3.850 motion (Ex. M at 39–42). The state circuit court adjudicated the claim as follows:

> Defendant claims counsel was ineffective for failing to adequately argue and preserve for appeal a motion for judgment of acquittal. He alleges Officer Huhn was not 100% certain Defendant was the driver of the vehicle as to the fleeing charge, and the officer testified he viewed the driver from the back of the head. Defendant asserts counsel should have sought acquittal based on the officer's failure to adequately identify Defendant as the driver of the car. He argues evidence of identification was completely circumstantial and failed to refute Defendant's hypothesis of innocence that someone else was driving his vehicle.
>
> At trial, Huhn testified he observed Defendant from the rear as Defendant was driving and immediately recognized Defendant based on his observation of Defendant in the rearview mirror and the back of Defendant's head, his previous contacts with Defendant, and his training in noting physical characteristics in aid of identification. (Exhibit B, pp. 81–83, 95–97.) After he recognized him, he ran the tag of the car Defendant was driving, which came back registered to Defendant. (Exhibit B, pp. 83, 96.)

Defendant could not obtain a judgment of acquittal unless there was "no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law." *See State v. Shearod*, 992 So. 2d 900, 903 (Fla. 2d DCA 2008) (internal quotation marks and citation omitted). The officer's eyewitness identification of Defendant was direct evidence and not merely circumstantial. *See Miller v. State*, 403 So. 2d 1014, 1015 (Fla. 5th DCA 1981). There was competent substantial evidence Defendant was the driver of the car, and thus there was no cause for counsel to argue for a judgment of acquittal on the basis of failure to identify Defendant and no reasonable probability of acquittal if counsel had made that argument. *See Cunningham v. State*, 385 So. 2d 721, 722 (Fla 3d DCA 1980).

Defendant also claims counsel was ineffective for failing to preserve the matter for appeal. Defendant fails to show a reasonable probability of a different outcome at trial but for such action. *See Carratelli v. State*, 961 So. 2d 312, 323–324 (Fla. 2007); *State v. Bouchard*, 922 So. 2d 424, 430 –431 (Fla. 2d DCA 2006).

(Ex. M at 73–74). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. N).

Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of <u>Strickland</u>, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted)[4]; *see also* <u>Callahan v. Campbell</u>, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of

---

[4] <u>Alvord</u> was superseded by statute on other grounds as noted in <u>Hargrove v. Solomon</u>, 227 F. App'x 806 (11th Cir. 2007).

Case No.:  3:14cv177/LAC/EMT

state law); <u>Herring v. Sec 'y Dep't of Corr.</u>, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (alterations in original) (quoting <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11th Cir. 1997)).

At Petitioner's trial, Police Officer David Huhn testified that on February 9, 2009, he was assigned to patrol the area around Sacred Heart Hospital and Cordova Mall (Ex. C at 80–97). He testified that at approximately 3:30 p.m., he observed Petitioner driving a vehicle at Ninth Avenue and Brent Lane/Bayou Boulevard. Officer Huhn testified that he pulled behind a black Jaguar that was sitting at a red light on Ninth Avenue in a turn lane to turn west onto Brent Lane. He testified that he could see the driver's face in the driver's rear view mirror, and he could see the back of the driver's head. Huhn testified that the windows of the Jaguar were not tinted. He testified that he had come into face-to-face contact with Petitioner on approximately three prior occasions. He testified that Petitioner had a "very oddly-shaped head" that was "very pointed at the top," and Petitioner's ears "stuck out further" than other people's ears. Officer Huhn testified that every time he saw Petitioner, he immediately recognized him as Mr. Henretty. Huhn testified that he ran a registration check on the license plate of the Jaguar "just to ensure that it was Mr. Henretty," and it came back as registered to Scott Phillip Henretty. He testified that Petitioner had an active warrant for his arrest in Escambia County. Officer Huhn testified that he followed the black Jaguar as it turned left or westbound onto Brent Lane, and he activated his emergency blue lights. He testified that Petitioner immediately made a U-turn and proceeded eastbound on Brent Lane at a high rate of speed. Huhn testified that he was wearing his police uniform at the time, and driving a marked Pensacola Police Department vehicle. He testified that he activated his siren and made a U-turn to follow Petitioner. Officer Huhn testified that the speed limit was 35 miles per hour, and Petitioner was traveling at approximately 55–60 miles per hour, weaving between the right and left lanes of

traffic. He testified that Petitioner ran a red light at the intersection of Ninth Avenue and Brent Lane/Bayou Boulevard, and nearly struck two cars in the process. He testified that Petitioner turned onto the service road of Cordova Mall and nearly struck another vehicle. He testified that Petitioner then ran a stop sign. Officer Huhn testified that he terminated his pursuit due to the high pedestrian and vehicle traffic in the parking lot. Huhn testified that his pursuit was recorded on his in-car video camera, and the recording was admitted into evidence. Huhn testified that the license plate number of the black Jaguar he chased was K576SG. He identified Petitioner as the driver who led him on the chase that day. Huhn testified that the driver was the only person in the vehicle.

On cross-examination, Officer Huhn testified that based upon his previous contacts with Petitioner and his visual observations of the back of the driver's head, he was "almost sure" that Scott Henretty was driving the Jaguar (Ex. C at 90–96). He admitted that he never viewed the driver from the front or the side, but only from the rear.

Ms. Lisa Scruggs testified that she was custodian of records for the Escambia County Tax Collector, which maintains vehicle registrations (Ex. C at 98–100). Ms. Scruggs testified that Petitioner was the registered owner of a 1998 four-door black Jaguar with license plate K576SG.

Here, as in Alvord, Callahan, and Herring, the state court has already answered the question of whether Petitioner's trial counsel had a meritorious basis to argue for a motion for JOA based upon the lack of evidence identifying Petitioner as the driver of the vehicle—there was no meritorious basis for the argument under Florida law. This court must defer to the state court's determination of state law. The failure by Petitioner's counsel to argue that the identity evidence was insufficient cannot be deemed deficient performance, and Petitioner cannot show he was prejudiced by counsel's failure to argue this as a basis for a motion for JOA, because, as the state court determined, such a motion had no arguable basis for success.

Petitioner failed to demonstrate that the state court's adjudication of this claim was contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to relief on Ground One.

> B.      Ground Two: "Petitioner was denied effective assistance of counsel when counsel failed to motion the court for a new jury panel and/or mistrial based on the fact that Sheriff Morgan had improper contact with prospective jurors, in violation of Petitioner's Sixth and Fourteenth Amendment rights of the United States Constitution."

Petitioner asserts that at the time of his trial, the Escambia County Sheriff had a practice of greeting members of the jury pool prior to jury selection (ECF No. 1 at 8–10). He alleges Sheriff Morgan would introduce himself, shake hands with the prospective jurors, distribute his business card, socialize with them, and comment about pending cases. Petitioner alleges Sheriff Morgan greeted the prospective jurors in his case. He alleges trial counsel was aware of this contact, because she asked the jury panel, "There is some discussion about the sheriff meeting everyone at the trolley . . . . Were you greeted by anyone else or just Sheriff Morgan?"; however, counsel did not wait for an answer or otherwise question prospective jurors as to whether the contact biased them in favor of the prosecution. Petitioner alleges trial counsel did not object to the Sheriff's contact, move to strike the jury panel, or move for a mistrial. Petitioner argues that the prejudice was "inherent," because prospective jurors inferred from the Sheriff's contact that the Sheriff had a special interest in Petitioner's case and wanted the jury to convict him. Petitioner alleges the jurors predetermined his guilt and were predisposed to believe the testimony of any law enforcement officers, specifically Police Officer Huhn. Petitioner alleges he was forced to go to trial with a biased jury. He contends there is a reasonable probability that the outcome of his trial would have been different if trial counsel had objected to the Sheriff's contact, moved to strike the jury panel, or moved for a mistrial. Petitioner asserts he raised this claim in his amended Rule 3.850 motion.

Respondent contends the state court properly denied the claim as meritless (ECF No. 10 at 12–13).

   1.  Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

   2.  Federal Review of State Court Decision

Petitioner raised this claim as Ground Two of his amended Rule 3.850 motion (Ex. M at 43–45. The state circuit court adjudicated the claim as follows:

> Defendant claims counsel was ineffective for failing to file a motion for a new jury panel or mistrial based on the sheriff's contact with prospective jurors. Defendant alleges the sheriff greeted prospective jury pools at the civic center prior to jury selection.[FN 1: Prospective jurors typically park at the civic center parking lot and are transferred by trolley to the courthouse.] He further alleges the State had only one witness, Office Huhn, to prove the fleeing charge, and he asserts the sheriff's actions predisposed jurors toward law enforcement. Defendant also claims

counsel failed to adequately voir dire the prospective jurors to obtain grounds to object and move to strike the panel.

During jury selection, trial counsel noted the jury had been greeted by the Escambia County Sheriff, and counsel asked if anyone had been greeted by the Pensacola police chief or a police officer, to which she did not receive an affirmative reply. (Exhibit B, pp. 9–10.) Defendant's allegations the jury panel was biased and an adequate voir dire would have provided grounds to strike it are conclusory and speculative, and he fails to allege facts showing any of the jurors were actually biased. *See Ferrell v. State*, 29 So. 3d 959, 974 (Fla. 2010) (where the defendant failed to allege questions counsel should have asked and failed to identify any juror who was unqualified or biased); *Davis v. State*, 928 So. 2d 1089, 1117 (Fla. 2005) (the defendant's claim of ineffectiveness during voir dire failed where he failed to demonstrate any unqualified juror served in his case). *See also Blackwood v. State*, 946 So. 2d 960, 970 (Fla. 2006) (allegation that prejudice was apparent was found conclusory). This claim is insufficient and without merit.

(Ex. M at 74–75). The First DCA affirmed the lower court's decision without written opinion (Ex. N).

A review of jury selection principles under federal and Florida law is helpful to the court's analysis of Petitioner's claim. A criminal defendant has a right to an impartial jury, and a prospective juror who lacks impartiality must be excused for cause. *See* Ross v. Oklahoma, 487 U.S. 81, 85–86, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988). To exclude a prospective juror for cause, a party "must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." United States v. Chandler, 996 F.2d 1073, 1102 (11th Cir. 1993) (emphasis added); *see also* Smith v. Phillips, 455 U.S. 209, 215, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). The burden is on the challenger to show the prospective juror has actual bias, so as to raise the presumption of partiality. Irvin v. Dowd, 366 U.S. 717, 723, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961). Moreover, the Supreme Court has upheld a trial court's seating of a juror even where the juror gave conflicting or ambiguous answers during voir dire about his ability to be impartial. *See, e.g.*, Patton v. Yount, 467 U.S. 1025, 1037 n.12, 1038–40, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984) (the constitutional standard for juror impartiality is whether the juror can lay aside his opinion and render a verdict based on the evidence presented in court); Murphy v. Florida, 421 U.S. 794, 801–03, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975).

Under Florida law, the test at trial "for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984). The trial court must grant a party's motion to strike a prospective juror for cause if there is "any reasonable doubt" as to the juror's impartiality. Singer v. State, 109 So. 2d 7, 23 (Fla. 1959).

Considering the record as a whole, the undersigned cannot say that the state court's determination that Petitioner's trial counsel was not ineffective was contrary to, or an unreasonable application of, Strickland, or that the state court's decision was based on an unreasonable determination of the facts in light of the record.

The transcript of voir dire shows that the prospective jurors were asked whether they were predisposed to give the testimony of law enforcement officers credibility:

> MS. HARNESS [the prosecutor]: Now is there anyone—does everyone here agree that no matter who that witness is that takes the stand, they will all start off on an even playing field?
>
> PROSPECTIVE JUROR: Yes.
>
> MS. HARNESS: For instance, if you know a law enforcement officer, you're not going to give them any more credibility just because they are a law enforcement officer. You're going to use those same factors that you would any other witness; does everyone agree to do that?
>
> PROSPECTIVE JUROR: Yes.
>
> MS. HARNESS: Okay. I see lots of heads nodding. Is there anyone that is going to have a problem with that? Okay. I see no hands. Now I'll just ask the same question. Probation officer. If you know they're a probation officer, will you still be able to look at them like you would any other witness and weigh their credibility just like any other witness?
>
> Okay. Thank you very much.
> . . . .
> MS. RICHARDS [defense counsel]: There is some discussion about the sheriff meeting everyone at the trolley. Now, this case was Pensacola Police Department more so than the Escambia County Sheriff's Department. I don't think the chief of police goes down there or any Pensacola police officer, but I should ask

that question.  Was there?  Were you greeted by anyone else or just Sheriff Morgan?
Okay.

(Ex. D at 7–10).

Additionally, immediately prior to deliberations, the trial court instructed the jury as follows:

It is to the evidence introduced in this trial and to it alone that you are to look for that proof.

A reasonable doubt as to the guilt of the defendant may arise from the evidence, conflict in the evidence, or the lack of evidence.

If you have a reasonable doubt, you should find the defendant not guilty.  If you have no reasonable doubt, you should find the defendant guilty.

It is up to you to decide what evidence is reliable.  You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict.

You may find some of the evidence not reliable or less reliable than other evidence.

You should consider how the witnesses acted, as well as what they said. Some things of the [sic] should consider are:

Did the witness seem to have an opportunity to see and know the things about which the witness testified?

Did the witness seem to have an accurate memory?

Was the witness honest and straightforward in answering the attorneys' questions?

Did the witness have some interest in how the case should be decided?

Does the witnesses' testimony agree with other testimony and other evidence in the case?

You may rely upon your own conclusions about the witnesses.  A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.
. . . .

> This case must be decided only upon the evidence that you have heard from the testimony of the witnesses and have seen in the form of the exhibits in evidence, and these instructions.
>
> . . . .
>
> Your verdict should not be influenced by feelings of prejudice, bias, or sympathy. Your verdict must be based on the evidence and on the law contained in these instructions.

(Ex. D at 146–49). In addition, all of the empaneled jurors, took an oath to be fair and impartial (Ex. D at 38–39). Jurors are presumed to follow the law as instructed by the trial court and to comply with their oaths. Hallford v. Culliver, 459 F.3d 1193, 1204 (11th Cir. 2006); United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005).

Here, the facts Petitioner alleges regarding Sheriff Morgan's greeting the prospective jurors do not demonstrate such a close connection to Petitioner's case that prejudice must be presumed. Additionally, Petitioner has not alleged the existence of any evidence showing that any juror in his case was actually biased against him. Furthermore, in the absence of any evidence that any juror was actually biased, the court must presume that each of them followed the trial judge's instructions, set aside any feelings of bias, and was fair and impartial during deliberations.

Petitioner has not shown that the state court's rejection of his ineffective assistance of counsel claim was contrary to or an unreasonable application of Strickland, or that the decision was based on an unreasonable determination of the facts. Therefore, he is not entitled to federal habeas relief. *See, e.g.*, Fennell v. Sec'y, Fla. Dep't of Corr., 582 F. App'x 828, 832–34 (11th Cir. 2014) (unpublished but recognized for persuasive authority) (denying habeas relief on claim of ineffective assistance of counsel based upon counsel's failure to strike juror for cause; state court reasonably concluded that petitioner failed to show deficient performance and prejudice where there was no evidence that juror was actually biased, and court must presume that juror followed trial judge's instructions and was fair and impartial during deliberations); Hudson v. McDonough, No. 4:05cv215/MMP/EMT, 2007 WL 1308676, at *1 (N.D. Fla. May 2, 2007) (unpublished) (denying habeas relief on claim of ineffective assistance of counsel based upon counsel's failure to strike juror for cause, where petitioner failed to present any evidence of actual bias beyond his allegations).

C.     Ground Three: "Petitioner was denied effective assistance of counsel when counsel failed to investigate and call attorney David Sellers to testify at trial and acquire and present

GPS tracking data, both of which would have negated the elements of intent in the GPS device tampering charge and impeached Carol Coleman's testimony, resulting in an acquittal, in violation of Petitioner's Fifth, Sixth and Fourteenth Amendment rights of the United States Constitution."

Petitioner claims that his trial counsel was ineffective for failing to call attorney David Sellers to testify at trial, and for failing to present GPS tracking data to impeach Carol Coleman's testimony (ECF No. 1 at 11–15). He alleges Attorney Sellers would have testified that Petitioner called his office to inform him that he violated his pretrial release and was facing arrest. He alleges Attorney Sellers would have testified that Petitioner then came to his office and informed him that he had violated pretrial release. Petitioner alleges Attorney Sellers would have testified that he (Sellers) advised Petitioner that if he left the State with the monitoring device, Petitioner would be charged with theft of the device, but that if Petitioner removed the device and left it with Sellers, Petitioner could not be charged with a crime. Petitioner alleges Attorney Sellers would have testified that Petitioner then asked him for a pair of scissors, and Sellers told him to get scissors from his secretary. Petitioner alleges the testimony of Ms. Coleman, Sellers's secretary, that Petitioner ran into the office and cut off the monitor while Sellers was out of the office was not true. He alleges that if trial counsel had subpoenaed the GPS monitoring records, they would have shown that he was in Attorney Sellers's office for at least ten minutes, which is the approximate amount of time he spent discussing the matter with Attorney Sellers. Petitioner contends these records would have impeached Ms. Coleman's testimony and corroborated Attorney Sellers's testimony. He alleges this evidence would have provided a basis for counsel to move for a JOA on Count 2 on the ground that the evidence of intent was insufficient. He also alleges the evidence would have allowed the jury to believe the defense theory, that he had no intent to steal or damage the GPS device and instead acted only on the advice of an attorney.

Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (ECF No. 10 at 12–13).

1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Three of his amended Rule 3.850 motion (Ex. M at

46–50).  The state circuit court adjudicated the claim as follows:

> Defendant claims counsel was ineffective for failing to call attorney David
> Sellers as a witness to testify and for failing to present GPS tracking data to impeach
> Carol Coleman's testimony.[FN 2:  There is no indication Sellers represented
> Defendant in the instant case.]  He alleges Sellers would testify Defendant came to
> his office and informed him he had violated pretrial release and Sellers told him he
> could cut off the GPS monitor with scissors and leave it with Sellers.  He alleges
> Coleman's testimony that Defendant ran into the office and cut off the monitor while
> Sellers was out was not true.  He also alleges GPS monitoring records would show
> he was there at least 10 minutes.
>
> Defendant further alleges he asked Sellers if he would be charged if he
> removed the monitor and Sellers advised Defendant would not be charged with a
> crime and further advised Defendant to get a pair of scissors from his secretary.
> Defendant's allegations regarding Sellers are inherently incredible.  *See Capalbo v.
> State*, 73 So. 3d 838, 840 (Fla. 4th DCA 2011).  They are also insufficient to negate
> Defendant's intent to tamper with his monitor.  Even if Sellers advised Defendant he
> could cut off the monitor, Defendant is charged with knowledge of the law and the
> consequences of his actions.  *See State v. Beasley*, 580 So. 2d 139, 142 (Fla. 1991);
> *Rollinson v. State*, 743 So. 2d 585, 587 (Fla. 4th DCA 1999); *Floyd v. State*, 707 So.
> 2d 833, 835 (Fla. 1st DCA 1998).  Moreover, at trial, Rita Spencer, a supervisor with
> the Escambia County Community Corrections, testified Defendant was placed on the
> GPS monitor in January 2009, and he was advised not to tamper with or destroy the
> equipment, and destruction of the equipment would result in criminal charges.
> (Exhibit B, pp. 65, 68–69.)  Similarly, evidence Defendant was at Sellers' office for
> about 10 minutes would not refute the fact he cut off his monitor.
>
> Defendant asserts had counsel presented Sellers' testimony and the GPS
> monitor, he would have been able to move for a judgment of acquittal and in turn
> would have preserved the issue for appeal.  For the reasons discussed above, there
> is no reasonable probability Defendant would have been granted a judgment of
> acquittal, and this claim is without merit.

(Ex. M at 75–76).  The First DCA affirmed the lower court's decision without written opinion (Ex.

N).

The State presented the following evidence with regard to the charge of destroying,

damaging, or altering electronic monitoring equipment.  Sanna Peacock, records custodian for the

Escambia County Clerk of Court, testified that on December 29, 2008, Judge Joyce Williams

released Petitioner in Case No. 2008-MM-028408 on pre-trial release, with the condition that Petitioner wear an active GPS monitor  (Ex. C at 51–55).

Carol Coleman testified that on February 6, 2009, she was working as a receptionist at the law firm of Sellers, Skievaski, and Stephenson (Ex. C at 56–64).  She testified that at approximately 2:00 p.m., Petitioner, who was a client of Attorney David Sellers, walked into the law firm and up to her desk, asked her for a pair of scissors, placed his leg on her desk, and cut the strap of a GPS monitor that was strapped to his leg.  She testified that he then handed her the scissors, placed the strap in a plastic bag and asked her to give it to Attorney Sellers, and ran out the door.  She testified that Petitioner was in the office for "not even five minutes."  Ms. Coleman testified that when Petitioner ran out of the office, she saw him run north on Twelfth Avenue to the Corner of DeSoto Street, and then saw him disappear behind a building.  Ms. Coleman testified that she did not see Petitioner get into a vehicle, but there was parking in the area where he ran.  She testified that Ms. Spencer and Mr. Cone from the probation office quickly arrived at the law firm and stated they had received a signal from the monitor that it had been cut.  Ms. Coleman testified that she contacted Attorney Sellers, and he instructed her to give Mr. Cone the plastic bag containing the ankle monitor.  She testified that she gave Mr. Cone the bag containing the strap.  Ms. Coleman identified Petitioner as the person who used her scissors to cut off the electronic ankle monitor.

Rita Spencer testified that she was a supervisor for the community corrections department (Ex. C at 65–77).  She testified that she and Mr. Saunders Cone were the two people assigned to monitor persons who were placed on GPS monitoring.  Ms. Spencer testified that she was familiar with Petitioner, because he had been placed on a GPS monitor by the court in January of 2009, and she had had personal contact with him while he was subject to monitoring.  Ms. Spencer described the monitoring system that the court imposed upon Petitioner as follows:

> A.      Basically that they'll be placed on the monitor.  That they are to keep it with them at all times.  They are to be charged a fee for the daily use of the monitor.  They are not to tamper with or destroy the equipment.  They are to return it upon the completion of their case.  If they don't, they'll be charged with a grand theft.  If they destroy it, they'll also be charged criminally for destroying property.
> . . . .
>       The GPS tracking system that Mr. Henretty was on is what we call an active GPS monitor.  On that monitor he has a little screen about this big that he carries

with him.  It's what we call a miniature tracking device [("MTD")], and he usually carries that in a case.

There also is a bracelet strap that is attached to his leg, and at home he would have a docking station in which he would charge the MTD on a daily basis.

Q [by the prosecutor].  So it the [sic] strap itself, is it considered part of the equipment?

A.      Yes, ma' am, it is.

. . . .

Daily we get what we call reports by e-mail from the monitoring center that actually do [sic] the monitoring of the GPS for us.  Also, if there is a violation, Mr. Cone would wear a beeper and he would be paged on the beeper if there was a violation due to any of the clients that he had on the monitor.  It was reinforced with an e-mail that was sent to us of the violation that occurred.

(Ex. C at 68–69).  Ms. Spencer testified that when Petitioner was placed on the monitor, the rules were explained to him.  She testified that Petitioner was subject to monitoring on February 6, 2009. Ms. Spencer testified that on that day, Mr. Cone received notification indicating that the bracelet strap of Petitioner's monitor was cut or that another violation of the monitoring rules had occurred. She testified that based upon information supplied by a computer, she and Mr. Cone narrowed down the location of the event to Twelfth Avenue and around DeSoto Street.  She testified that the GPS records indicated that the bracelet strap was cut at 2:47 p.m..  She testified that Mr. Cone indicated that Attorney Sellers was Petitioner's attorney, and that his office may be located at that address. Ms. Spencer testified that she and Mr. Cone went to Attorney Sellers's office and spoke with Ms. Coleman.  Ms. Spencer testified that all of the electronic monitoring equipment was there, and the bracelet strap had been cut and severed from the rest of the equipment.  She testified that once the strap is cut, the monitor does not work.  Ms. Spencer testified that just prior to this event, Mr. Cone had notified Petitioner to bring all of the monitoring equipment to the department's office because his bond was being revoked.  Ms. Spencer identified Petitioner as Scott Phillip Henretty.

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference.  Chandler v. United States, 218 F.3d 1305, at 1314 n.14 (11th Cir. 2000) (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)).  If the record is not complete regarding counsel's actions, then the courts should presume "that what the particular

defense lawyer did at trial—for example, what witnesses he presented or did not present-were acts that some reasonable lawyer might do." *Id.* at 1314–15 n.15. "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." Waters, 46 F.3d at 1514. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)

Petitioner did not proffer to the state court any reliable evidence, in the form of an affidavit or otherwise, that Attorney Sellers would have testified as Petitioner describes; indeed, the state court found that Petitioner's allegations were not only unreliable but "inherently incredible." Likewise, Petitioner did not proffer to the state court any reliable evidence that the GPS records would have shown that he was in Attorney Sellers's office for approximately ten minutes. Petitioner's speculative assertions as to the content of Sellers's proposed trial testimony and the content of the GPS records are insufficient to show that defense counsel's failure to present them at trial was unreasonable.

Moreover, the state court determined that under Florida law, the un-presented evidence (i.e., evidence that Petitioner was in Attorney Sellers's office long enough to have had a conversation, and that Sellers told Petitioner he could not be charged with a crime if he removed the device and left it with him) would not have refuted the evidence that Petitioner cut off his monitor, and it was insufficient to negate the intent element of Florida Statutes § 948.11(7). In light of these determinations, the state court reasonably concluded that Petitioner failed to show that trial counsel was ineffective for failing to present the GPS records and Attorney Sellers's testimony at trial.

Petitioner failed to show that the state court's adjudication of Ground Three was contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to relief on this claim.

    D.    Ground Four: "Petitioner was denied effective assistance of counsel when counsel failed to timely and properly file a motion to dismiss based on multiple violations of the Interstate Agreement on Detainers Act, in violation of Petitioner's Fifth, Sixth and Fourteenth Amendment rights of the United States Constitution."

Petitioner alleges he told trial counsel that he wanted her to file a motion to dismiss based upon multiple violations of the Interstate Agreement on Detainers Act ("IADA") (ECF No. 1 at

16–18). He states he told counsel that the charges in this case were not included in the detainers lodged against him while he was incarcerated in the State of Texas. He argues that under the IADA, he could only be prosecuted on the charge or charges covered by the detainers. He alleges the charges in this case did not arise out of any transaction for which the detainers were lodged, and were entirely unrelated to the crimes charged in the detainers. Petitioner additionally contends he was not taken to trial within the 180-day time limit provided in the IADA. He contends trial counsel failed to investigate any of these IADA issues and instead waited until the first day of trial to make a "bare bones" motion to dismiss on IADA grounds, without arguing a legally sufficient basis for the motion. Petitioner contends if trial counsel had investigated the IADA issue and timely filed a motion to dismiss, the trial court would have granted the motion and discharged Petitioner, or the issue would have been preserved for appellate review. He asserts he presented this claim in his amended Rule 3.850 motion.

Respondent contends the state court's adjudication of Petitioner's IAC claim was not contrary to or an unreasonable application of clearly established federal law (ECF No. 10 at 14–15).

1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Four of his amended Rule 3.850 motion (Ex. M at 51–53). The state circuit court adjudicated the claim as follows:

> Defendant claims counsel was ineffective for failing to file an adequate motion dismiss based on violations of the Interstate Agreement on Detainers Act (IADA). *See* § 941.45, Fla. Stat. He alleges he advised counsel the charges in the instant case were not included in the detainers lodged against him while he was in Texas, and the detainers were based upon unrelated crimes. He argues the State is prohibited from charging a defendant with a crime not part of the agreement for temporary custody. Defendant acknowledges counsel filed a motion dismiss but alleges counsel waited till [sic] the day of trial to file a bare bones motion. (Exhibit B, pp. 23–27). He claims had counsel researched the law and facts and properly and timely filed the motion, it would have been granted or at least the matter preserved for appellate review. Defendant's claim is without merit. *See Jones v. State*, 386 So. 804, 804–805 (Fla. 1st DCA 1980) (finding section 941.45 did not limit the court's jurisdiction to a defendant on a charge not named in the detainer).

Defendant also claims the [A]ct was violated where he was not taken to trial within 180 days as provided in the [A]ct. This claim fails in that there is no showing Defendant was brought to trial pursuant to the IADA. His claim counsel failed to preserve the matter for appeal is insufficiently pled and without merit.

(Ex. M at 76). The First DCA affirmed the lower court's decision without written opinion (Ex. N).

In Jones, the case cited by the state circuit court, the First DCA held that Florida Statutes § 941.45(5)(d), the section of the IADA governing a "sending state's" offer to deliver temporary custody of a defendant to a "receiving state," did not limit the receiving state court's jurisdiction over a defendant; therefore, notwithstanding the fact that a defendant is returned to Florida only for the purpose of facing prosecution for a certain crime, the trial court had jurisdiction to convict and sentence him on an unrelated charge. *See* Jones, 386 So. 2d at 804–05 (citing United States v. Lopez, 542 F.2d 283 (5th Cir. 1976); United States v. Lara, 539 F.2d 495 (5th Cir. 1976); Ker v. Illinois, 119 U.S. 436, 7 S. Ct. 225, 30 L. Ed. 421 (1886), Frisbie v. Collins, 342 U.S. 519, 72 S. Ct. 509, 96 L. Ed. 541 (1952), Lascelles v. Georgia, 148 U.S. 537, 13 S. Ct. 687, 37 L. Ed. 549 (1893); Camp v. United States, 587 F.2d 397 (8th Cir. 1978)). Further, as the state court found, Petitioner was not brought to trial pursuant to the IADA on the charges in this case; therefore, the time limitations set forth therein did not apply.

In the absence of a meritorious basis for seeking dismissal of the charges on IADA grounds, counsel's failure to raise—or argue the issue in the manner Petitioner claims she should have—in the trial court cannot be deemed deficient, and Petitioner cannot show he was prejudiced. The state court's adjudication of this claim was not contrary to or an unreasonable application of Strickland. Therefore, Petitioner is not entitled to federal habeas relief on Ground Four.

E.    Ground Five: "Trial counsel was ineffective for failing to move in limine or object and move for mistrial to exclude excess prejudicial evidence that was impermissible [and] assaulted Petitioner's character and implied prior arrest for the very charges Petitioner was on trial for, in violation of Petitioner's Fifth, Sixth and Fourteenth Amendment rights of the United States Constitution.

Petitioner claims that defense counsel should have sought to exclude evidence of Petitioner's prior contact with law enforcement, specifically, Officer Huhn's testimony that (1) he had contact with Petitioner on three prior occasions, (2) based upon his prior contacts with Petitioner, he ran a records check to determine if Petitioner was the subject of any outstanding warrants, and (3) he

requested back-up assistance due to "factors" that he knew about Petitioner (ECF No. 1 at 19–23). Petitioner acknowledges that the State could properly elicit testimony from Officer Huhn regarding the basis for his ability to recognize Petitioner as the driver of the vehicle, but he contends the State went too far.  Petitioner contends this evidence was inadmissible bad character evidence to show his propensity to commit the crimes.  He contends if counsel had sought to limit Officer Huhn's testimony via a motion in limine, or moved for a mistrial after Officer Huhn testified to those matters, the trial court would have granted counsel's motion.  Petitioner asserts he raised this claim in his Rule 3.850 motion.

Respondent contends the state court's adjudication of this IAC claim was not contrary to or an unreasonable application of clearly established federal law (ECF No. 10 at 15–16).

1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Five of his amended Rule 3.850 motion (Ex. M at 54–59).  The state circuit court adjudicated the claim as follows:

> Defendant alleges the prosecution introduced excessive irrelevant information concerning Defendant's prior contacts with law enforcement.  Defendant specifically objects to testimony Huhn had contact with him three times, Huhn ran a records check to determine if Defendant had any warrants from past contacts, and Huhn testified as to requesting backup because of factors he knew about Defendant.  Defendant argues Huhn should have been limited to testifying he knew Defendant, and his statements implied Defendant was prone to resist arrest and flee.  He claims counsel should have moved to exclude these statements and objected and moved for a mistrial.
>
> Generally, a police officer should not testify as to any prior contacts with a defendant, because it can lead to the jury concluding the defendant was involved in prior criminal conduct.  *See Harlie v. State*, 513 So. 2d 791, 793–794 (Fla 4th DCA 1987).  The officer may testify if he does not divulge his occupation or the circumstances of the prior involvement with the defendant.  *Id.*  In this case, Huhn testified he had prior face-to-face encounters with Defendant.  (Exhibit B, pp. 81–82.)  This testimony gives no detail as to the nature or circumstances of said contacts and was relevant to Huhn's ability to identify Defendant.  Huhn's identity as a police officer was relevant and necessary to the charge of Defendant fleeing him and thus was more probative than prejudicial.  Moreover, there was also evidence of

prior criminal conduct in the nature of the warrant, which was the reason Huhn was attempting to make the traffic stop, as well as the fact Defendant had been wearing a GPS monitor as required in another case. (Exhibit B, pp. 53–54.) Also, upon cross examination, Huhn testified he had never written any kind of traffic ticket to Defendant or arrested him for anything. (Exhibit B, p. 93.)

Defendant misstates the reason Huhn ran a check on him. Huhn testified he ran a check on the vehicle registration "to see if he had any warrants from previous incidents." (Exhibit B, p. 83.) This statement is not objectionable. Huhn also testified, after he discovered the car was registered to Defendant and there was an active warrant on him, because of factors he knew about, he turned onto the street Defendant was driving, and requested another officer meet him so he could make a traffic stop to effect an arrest. (Exhibit B, pp. 83–84.) This statement does not imply Defendant was known to evade arrest and is not objectionable.

(Ex. M at 77–78). The First DCA affirmed the lower court's decision without written opinion (Ex. N).

The state court has already answered the question of whether Officer Huhn's testimony was objectionable under Florida law—it was not. This court must defer to the state court's determination of state law. Defense counsel's failure to raise the issue, either by objection or a motion for mistrial, cannot be deemed deficient performance. Further, Petitioner cannot show he was prejudiced by counsel's failure to object or move for mistrial, because counsel had no arguable basis for success in doing so.

Petitioner failed to demonstrate that the state court's adjudication of this IAC claim was contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to relief on Ground Five.

F.    Ground Six: "Petitioner was denied effective assistance of counsel when counsel failed to effectively cross-examine Officer Huhn, in violation of Petitioner's Fifth, Sixth and Fourteenth Amendment rights of the United States Constitution.

Petitioner alleges he informed trial counsel that he did not know Officer Huhn, and that he did not know the "prior contacts" to which Huhn was referring when he stated he had prior contacts with Petitioner (ECF No. 1 at 24–26). Petitioner acknowledges that defense counsel asked Officer Huhn on cross-examination whether he had ever arrested Petitioner or given him a ticket, and Huhn testified that he had not; but Petitioner contends counsel should the have questioned Huhn about specifics as to how he knew Petitioner. Petitioner argues that if counsel had asked for specifics as

to Huhn's prior contacts with him, Huhn would have revealed that he did not know Petitioner and thus was not able to recognize Petitioner from the back of his head. Petitioner contends there is a reasonable probability that the outcome of trial would have been different if counsel had asked Officer Huhn specifically how he knew Petitioner. Petitioner asserts he raised this claim in his Rule 3.850 motion.

Respondent contends the state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law (ECF No. 10 at 16–17). Respondent argues that if counsel had asked Officer Huhn how he knew Petitioner, it would have opened the door for Huhn to testify that he knew Petitioner because he was a registered sex offender. Respondent contends counsel cannot be deficient to failing to open this door. Respondent argues that Petitioner's faulting counsel for allowing Huhn to provide too much information about his contact with Petitioner (the basis for Ground Five, *supra*) and also faulting counsel for allowing Huhn to provide too little information (the basis for Ground Six) illustrates the delicate balance that counsel was required to strike in questioning Officer Huhn. Respondent contends that counsel struck a reasonable balance in this case, by questioning Officer Huhn in a way that cast doubt on Huhn's ability to identify Petitioner, but did not facilitate the jury's learning inflammatory information about Petitioner.

       1.       Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

       2.       Federal Review of State Court Decision

Petitioner raised this claim as Ground Six of his amended Rule 3.850 motion (Ex. M at 60–62). The state circuit court adjudicated the claim as follows:

> Defendant claims counsel was ineffective for failing to properly cross examine Huhn. He alleges he never had any prior contact with Huhn and asserts counsel should have asked Huhn how he knew Defendant. He argues such questioning would have revealed Huhn did not know Defendant and would have impeached the officer's identification of Defendant, resulting in a different outcome. Defendant's claim as to how Huhn would have answered and its effect on the proceedings is too speculative to merit an evidentiary hearing. Also, Huhn's arrest report indicates he was aware through previous contact Defendant is a registered sex offender and criminal. (Exhibit C.) There is no reasonable probability such testimony would have resulted in a more favorable outcome for Defendant.

(Ex. M at 78). The First DCA affirmed the lower court's decision without written opinion (Ex. N).

Petitioner's assertion that counsel's further questioning of Officer Huhn would have revealed that Huhn did not know Petitioner and thus was not able to recognize him, is unsupported and purely speculative. Further, his speculation is undermined by the information reported by Officer Huhn in the probable cause narrative of his police report, in which Huhn stated that he was aware, through previous contact, that Petitioner was a registered sex offender and registered criminal (*see* Ex. C at 3–6). Defense counsel's decision not to delve into the specifics of how Officer Huhn knew Petitioner was reasonable. Further, in light of the damaging nature of Huhn's likely response to such questioning, Petitioner failed to show a reasonable probability that the result of trial would have been different if counsel had demanded specifics from Officer Huhn.

The state court's adjudication of this claim was not contrary to or an unreasonable application of <u>Strickland</u>. Therefore, Petitioner is not entitled to relief on Ground Six.

G. <u>Ground Seven: "Counsel was ineffective for failing to object to prosecutorial misconduct where the prosecutor testified during a question to facts not in evidence, in violation of Petitioner's Fifth, Sixth and Fourteenth Amendment rights of the United States Constitution.</u>

Petitioner alleges trial counsel was ineffective for failing to object to the prosecutor's asserting a fact not in evidence when questioning Officer Huhn (ECF No. 1 at 27–30). Petitioner states that the prosecutor asked, "And that was your observation via the rearview mirror, seeing him in the rearview mirror, and seeing the back of his head?" Petitioner asserts Officer Huhn never testified that he saw Petitioner in the rearview mirror. He asserts the prosecutor then mentioned this fact during her closing argument, which constituted improper comment on a fact not in evidence. Petitioner contends trial counsel should have objected to the prosecutor's question and closing argument, and moved for a mistrial. He contends if counsel had objected and moved for a mistrial, the outcome of the proceeding would have been different, or the issue would have been preserved for appeal. Petitioner asserts he raised this claim in his Rule 3.850 motion.

Respondent contends the state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law (ECF No. 10 at 17–19). Respondent contends the fact that Officer Huhn observed Petitioner through the rearview mirror was included

in Huhn's probable cause narrative; therefore, counsel's alleged error was neither unreasonable nor prejudicial.

   1. Clearly Established Federal Law

  The <u>Strickland</u> standard, set forth *supra*, governs this claim.

   2. Federal Review of State Court Decision

  Petitioner raised this claim as Ground Seven of his amended Rule 3.850 motion (Ex. M at 63–66). The state circuit court adjudicated the claim as follows:

> Defendant claims counsel was ineffective for failing to object and move for a mistrial when the prosecutor inquired of Huhn as to his observation of Defendant by seeing him in Defendant's rearview mirror. He asserts the prosecutor's inquiry was not a question but rather a statement, and the prosecutor was testifying to facts not in evidence.
>
> Huhn's arrest report indicates he observed Defendant through the rearview mirror and rear window. (Exhibit C.) When the prosecutor inquired about Huhn seeing Defendant in the rearview mirror, the officer responded in the affirmative. (Exhibit B, p. 97.) This question was perhaps leading. However, Defendant fails to allege facts showing the State could not have simply rephrased the question and obtained an answer consistent with the police report. *See Murrell v. Edwards*, 504 So. 2d 35, 36–37 (Fla 5th DCA 1987). Defendant also fails to demonstrate that evidence Huhn saw Defendant in the rearview mirror was otherwise objectionable or grounds for a mistrial. Once such facts were in evidence, it was fair for the prosecutor to comment on them in closing.

(Ex. M at 78–79). The First DCA affirmed the lower court's decision without written opinion (Ex. N).

  The state court record confirms that in Officer Huhn's probable cause narrative of his report, he stated, "I could see the driver through the rearview mirror and the rear window" (Ex. C at 4). As the state court determined, although defense counsel could have objected to the prosecutor's question as leading, the objection would not have prevented the fact from coming into evidence, because the prosecutor could have simply rephrased the question. Further, once the fact was in evidence, the prosecutor's commenting on it during closing argument was proper, and there was no basis for a mistrial.

The state court's adjudication of Petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of <u>Strickland</u>. Therefore, Petitioner is not entitled to relief on Ground Seven.

H. <u>Ground Eight: "The cumulative effect of counsel's multiple errors deprived Petitioner of his right to due process and a fair trial, in violation of Petitioner's Fifth, Sixth, and Fourteenth Amendment rights of the United States Constitution."</u>

Petitioner alleges that trial counsel's numerous errors, when viewed cumulatively, deprived him of his rights to due process and a fair trial (ECF No. 1 at 31). He contends there is a reasonable probability that but for counsel's errors, the outcome of the proceedings would have been different. He asserts he presented this claim in his Rule 3.850 motion.

Respondent contends there is no clearly established federal constitutional claim recognized by the United States Supreme Court of cumulative error based on ineffective assistance and, therefore, a state court cannot act contrary to Supreme Court authority when rejecting a cumulative ineffective assistance claim (ECF No. 10 at 19–21).

Petitioner raised this claim as Ground Eight of his amended Rule 3.850 motion (Ex. M at 67). The state circuit court adjudicated the claim as follows:

> Defendant claims counsel was ineffective based on the cumulative effect of the errors alleged above. Because his other claims are either insufficiently pled or without merit as demonstrated by the record, this claim fails as well. *See Israel v. State*, 985 So. 2d 510, 520 (Fla. 2008).

(Ex. M at 79). The First DCA affirmed the lower court's decision without written opinion (Ex. N).

In rejecting a similar "cumulative error" argument made by a § 2254 habeas petitioner, the Eleventh Circuit stated: "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." <u>Forrest v. Fla. Dep't of Corr.</u>, 342 F. App'x 560, 564 (11th Cir. 2009) (per curiam) (unpublished but recognized for persuasive authority). The <u>Forrest</u> panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564–65 (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L .Ed. 2d 657 (1984)).

In light of <u>Cronic</u> and the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, the state court's rejection of Petitioner's claim is not contrary to or an unreasonable application of clearly established federal law. *See* <u>Wright v. Van Patten</u>, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established federal law."); <u>Schriro v. Landrigan</u>, 550 U.S. 465, 478, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) (The Arizona Supreme Court did not unreasonably apply federal law because "we have never addressed a situation like this."); <u>Reese v. Sec'y, Fla. Dep't of Corr.</u>, 675 F.3d 1277, 1287–88 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law."); *see also* <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law).

I.    <u>Ground Nine:  "Petitioner was denied a fair trial by an impartial jury when Sheriff David Morgan had improper contact with prospective jurors, in violation of the Petitioner's Fifth, Sixth, and Fourteenth Amendment rights of the United States Constitution."</u>

Petitioner claims that he was denied a fair trial by an impartial jury when Sheriff David Morgan greeted the jury pool prior to jury selection, introduced himself to the jurors, shook the jurors' hands, distributed his business cards, socialized with them, and commented about pending cases (ECF No. 1 at 32–34).  Petitioner asserts the trial court was aware that Sheriff Morgan had such contact with the prospective jurors in Petitioner's case.  He contends the trial court should have dismissed the jury pool on its own motion, in order to exclude biased jurors.  Petitioner contends the Sheriff's contact was inherently prejudicial, because the jurors inferred that the Sheriff had a special interest in Petitioner's case, and thus would have believed that the Sheriff wanted them to convict him.  Petitioner asserts the jurors pre-determined his guilt and were predisposed to find the testimony of law enforcement officers credible.  Petitioner argues he was forced to go to trial with

a biased jury, in violation of his federal due process rights. He asserts there is a reasonable probability that the outcome of his trial would have been different but for the trial court's failure to dismiss the jury pool. Petitioner asserts that after his trial, this federal court issued an order directing Sheriff Morgan to curtail his practice of greeting potential jurors.

Respondent contends Petitioner never presented this claim to the trial court for disposition and, therefore, failed to properly exhaust it; and the claim is now procedurally defaulted (ECF No 10 at 23–24). Respondent further contends the claim is without merit in light of the state court's finding as to Ground Two that defense counsel asked the prospective jurors whether the Sheriff had spoken with any of them, and none of them answered affirmatively.

In Petitioner's reply, he contends he exhausted Ground Nine by raising it in his initial brief on direct appeal of his conviction (ECF No. 27 at 11–13).

As discussed *supra* in Ground Two, Petitioner's counsel did not raise this issue in the trial court. On direct appeal, Petitioner argued that fundamental error occurred in the trial court when Sheriff Morgan met, greeted, and spoke with prospective jurors, in violation of Petitioner's right to an impartial jury and a fair trial under the Sixth and Fourteenth Amendments as recognized by the Supreme Court in Estelle v. Williams, 425 U.S. 501 (1976) (Ex. F at 2–6). Petitioner argued that the Sheriff's practice was inherently prejudicial to him, because it created an unacceptable risk of impermissible factors coming into play in his trial. He argued that there was a "very real possibility" that some of the jurors inferred that the Sheriff had a special interest in a pending case. He further argued that the Sheriff's friendliness opened the door to jurors' speculating as to whether the Sheriff wanted a conviction from them. Petitioner additionally asserted that the State had only one witness with regard to the charge in Count 1 (fleeing or eluding a law enforcement officer), and that witness was Police Officer Huhn. Petitioner argued that it was reasonable to assume that the jurors became predisposed toward law enforcement, and were more inclined to believe Huhn's testimony as a result of Sheriff Morgan's contact. He argued that the potential for bias was "exponential" and sufficient to undermine the outcome of his trial. He argued Sheriff Morgan's conduct was analogous to the facts of Woods v. Dugger, 923 F.2d 1454 (11th Cir. 1999), in which the Eleventh Circuit reversed a conviction based upon the "hostile presence" of 30–50 uniformed officers in the courtroom. One of the exhibits that Petitioner submitted with his brief was a letter from three district judges from

this federal court to Sheriff Morgan, requesting that he refrain from further contact with prospective jurors (Ex. B of initial brief). As the basis for the request, the letter states:

> Your interactions with [ ] prospective jurors raise legitimate concerns about the court's ability to seat fair and impartial juries, especially when considering that the majority of those selected will serve on criminal juries. The potential for bias created by a senior elected public law enforcement official greeting prospective jurors and handing out business cards to them just prior to jury selection is undeniable, as is the disruption to our local criminal justice system that would result if the court were unable to seat fair and impartial juries to hear these trials. Even if no actual bias results, the court nonetheless is concerned that your practice at a minimum gives the appearance of bias, which in our view seriously undermines the public's confidence in the fair administration of justice.

(*id.*). The undersigned concludes that Petitioner's presentation of his federal claim on direct appeal satisfied the "fair presentation" requirement of § 2254.

The State did not file an answer brief in the direct appeal. The First DCA affirmed the judgment of conviction without discussion of any of the claims raised by Petitioner (Ex. G).

Section § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits." *See* Richter, 562 U.S. at 99. When a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits in the absence of any indication or state-law procedural principles to the contrary. *Id.* The presumption may be overcome when there is a reason to think some other explanation for the state court's decision is more likely. *Id.* at 99–100. In this case, there is no indication or reason to think that the First DCA rejected Petitioner's fair trial claim on grounds other than the merits. Therefore, § 2254(d) applies, and Petitioner is entitled to relief only if he demonstrates that the First DCA's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. *See* Richter, 562 U.S. at 100.

The Supreme Court has generally held that central to the right to a fair trial guaranteed by the Sixth and Fourteenth Amendments is the principle that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and

not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." Taylor v. Kentucky, 436 U.S. 478, 485, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978); *see also* Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961) (the Sixth and Fourteenth Amendments guarantee the right of state criminal defendants to be tried "by a panel of impartial, 'indifferent' jurors . . . [whose] verdict must be based upon the evidence developed at trial.")

The Supreme Court has generally analyzed outside intrusions upon the jury for prejudicial impact. *See, e.g.,* Parker v. Gladden, 385 U.S. 363, 87 S. Ct. 468, 17 L. Ed. 2d 420 (1967) (per curiam) (bailiff's comments to jurors, such as "Oh that wicked fellow he is guilty," were prejudicial); Patton v. Yount, 467 U.S. 1025, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984) (pretrial publicity was not prejudicial); Holbrook v. Flynn, 475 U.S. 560, 571, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986) (presence of uniformed state troopers in courtroom was not prejudicial). The ultimate inquiry is whether the intrusion prejudiced the defendant, "either specifically or presumptively." *See* United States v. Olano, 507 U.S. 725, 739, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) (holding that the presence in the jury room during deliberations of alternates, who had been instructed that they could sit in on the deliberations but were not to participate, was not plain error as it did not affect substantial rights of defendants).

No United States Supreme Court holding embodies the legal principle at issue in Ground Nine—whether a senior elected public law enforcement official's pre-trial contact with prospective jurors in the nature described by Petitioner is so inherently prejudicial that it deprives the defendant of a fair trial. Given the lack of holdings from the Supreme Court on the issue Petitioner raises, the First DCA's rejection of Petitioner's constitutional challenge to the Sheriff Morgan's practice was not contrary to, and did not involve an unreasonable application of, clearly established federal law. *See* Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1377, 191 L. Ed. 2d 464 (2015) (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court."); Wright v. Van Patten, 552 U.S. 120, 125–26, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) (holding, as to claim that defendant's right to counsel was violated when defense counsel appeared

via speaker phone at defendant's plea hearing:  "No decision of this court . . . squarely addresses the issue in this case, or clearly establishes that <u>Cronic</u> should replace <u>Strickland</u> in this novel factual context. . . .  Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established federal law."); <u>Schriro v. Landrigan</u>, 550 U.S. 465, 478, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) (holding that the state court did not unreasonably apply federal law because "we have never addressed a situation like this."); <u>Carey v. Musladin</u>, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) (holding that although the Supreme Court has recognized that certain courtroom practices are so inherently prejudicial that they deprive a defendant of a fair trial, "given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here," the denial of relief by the state court "was not contrary to or an unreasonable application of clearly established federal law."); *see also, e.g.*, <u>Reese v. Sec'y, Fla. Dep't of Corr.</u>, 675 F.3d 1277, 1287–88 (11th Cir. 2012) ("[T]he Supreme Court has never held that a prosecutor's closing arguments were so unfair as to violate the right of a defendant to due process.  Reese is not entitled to habeas relief because 'it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court].'  The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.") (quoting <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009)); <u>Kitchen v. Sec'y, Fla. Dep't of Corr.</u>, 571 F. App'x 930, 932 (11th Cir. 2014) (unpublished but recognized for persuasive authority) ("The state courts' decisions in the instant case were not contrary to or unreasonable applications of clearly-established federal law because no Supreme Court precedent establishes that translations of court proceedings that are inadequate in the manner Kitchen alleges render a trial 'fundamentally unfair.'").

Petitioner cites <u>Holbrook v. Flynn</u>, 475 U.S. 560, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986) and <u>Satterwhite v. Texas</u>, 486 U.S. 249, 256, 108 S. Ct. 1792, 100 L. Ed. 2d 264 (1988) as the clearly established federal law governing his claim (*see* ECF No. 27 at 12).  He cites <u>Flynn</u> for the

proposition that the Constitution protects against the "unacceptable risk of impermissible factors coming into play" in a criminal trial (*see* ECF No. 27 at 12).  He cites <u>Satterwhite</u> for the proposition that "some constitutional violations by their very nature cast so much doubt on the fairness of the trial process that as a matter of law, they can never be considered harmless" (*id.*).  Neither of these cases confronts the specific question presented by this case—whether a senior elected public law enforcement official's pre-trial contact with prospective jurors in the nature described by Petitioner is so inherently prejudicial that it deprives the defendant of a fair trial.

Because Petitioner has not established that the First DCA's rejection of his claim was contrary to, or an unreasonable application of clearly established Supreme Court precedent, Ground Nine provides no basis for relief under § 2254(d)(1).

Moreover, Petitioner is not entitled to federal habeas relief even when his claim is analyzed under legal precedent which does <u>not</u> qualify as "clearly established federal law" for purposes of § 2254(d), for example, Eleventh Circuit precedent.  The Eleventh Circuit examines the "totality of circumstances" in determining whether an outside intrusion prejudiced a defendant.  <u>Woods</u>, 923 F.2d at 1457.  The Eleventh Circuit has held that to prevail on a defendant's claim that he did not receive a fair trial, a defendant must establish that the events surrounding his trial resulted in either actual or presumed prejudice.  *See* <u>Mills v. Singletary</u>, 63 F.3d 999, 1009 (11th Cir. 1995) (citing <u>Coleman v. Kemp</u>, 778 F.2d 1487, 1489 (11th Cir. 1985); <u>Coleman v. Zant</u>, 708 F.2d 541, 544 (11th Cir. 1983); <u>Woods</u>, 923 F.2d at 1457.

To demonstrate actual prejudice, the defendant must prove that "one or more jurors entertained an opinion before the trial" that the defendant was guilty and "that these jurors could not put this prejudice aside and render a verdict based solely on the evidence presented."  <u>Mills</u>, 63 F.3d at 1009 (citing <u>United States v. De La Vega</u>, 913 F.2d 861, 864–65 (11th Cir. 1990); <u>United States v. Lehder–Rivas</u>, 955 F.2d 1510, 1525 (11th Cir. 1992)).  To determine whether the defendant has established presumed prejudice, the court must examine whether:  (1) the event at issue was sufficiently prejudicial and inflammatory; and (2) the event saturated the pool of potential jurors.  *See* <u>Mills</u>, 63 F.3d at 1010; <u>Coleman</u>, 708 F.2d at 544 (holding that this standard applies to a defendant's claim that the trial court deprived him of a fair trial by an impartial jury by denying a change of venue based upon pretrial publicity).  The Eleventh Circuit has repeatedly noted that the

principle of presumed prejudice "is rarely applicable and reserved for extreme situations." *See* <u>Mills</u>, 63 F.3d at 1010; <u>Bundy v. Dugger</u>, 850 F.2d 1402, 1424 (11th Cir. 1988); <u>Woods</u>, 923 F.2d at 1459.

In this case, the First DCA could have reasonably concluded that Petitioner failed to demonstrate he was actually prejudiced by Sheriff Morgan's pre-trial practice of greeting prospective jurors. Petitioner alleged in his initial brief that Sheriff Morgan's contact with potential jurors involved introducing himself to the jurors, shaking their hands, distributing his business cards, socializing with them, and commenting about pending cases. Petitioner did not allege that Sheriff Morgan commented on his particular case. Further, although all of the potential jurors were allegedly exposed to Sheriff Morgan's contact, Petitioner did not show that even one juror, prior to hearing the evidence, had formed an opinion that he was guilty; and even if Petitioner had presented evidence indicating that a juror had formed such an opinion, he still would have had to show that the juror could not have laid aside his or her pre-formed opinion and rendered a verdict based on the evidence presented in court.[5] *See* <u>Mills</u>, 63 F.3d at 1009 (citation omitted); <u>Coleman</u>, 708 F.2d at 544 (citation omitted). Therefore, the state court reasonably could have concluded that Petitioner failed to establish actual prejudice in this case.

As previously discussed, with regard to presumed prejudice, the court must examine whether: (1) the event at issue was sufficiently prejudicial and inflammatory; and (2) the event saturated the pool of potential jurors. Petitioner argues that Sheriff Morgan's greeting the prospective jurors was the equivalent of Petitioner's mother greeting them, which absolutely would not have been tolerated by the court. However, Petitioner's analogy goes too far. There is no indication in the record that either Sheriff Morgan or the Escambia County Sheriff's Office had any

---

[5] As discussed *supra* in Ground Two, the prosecutor questioned the potential jurors regarding their ability to assess the credibility of all witnesses in accordance with the same standard, and not give a certain witness more credibility by virtue of his or her position as a law enforcement official; and there was no indication from any potential juror that he or she did not have the ability to do so (Ex. D at 7–10). Additionally, at the close of the evidence, the trial court instructed the jurors that they were to look only to the evidence introduced at trial for proof, and that their verdict should not be influenced by feelings of prejudice, bias, or sympathy (*id.* at 146–49). The court also instructed them of the proper standard for assessing the credibility of each witness (*id.*). In addition, all of the empaneled jurors took an oath to be fair and impartial (*id.* at 8–39).

connection to Petitioner's case.[6]  Nor is there any indication that Sheriff Morgan mentioned any particular case.  In light of the circumstances presented to the First DCA, the court reasonably could have determined that Petitioner failed to show that Sheriff Morgan's contact was so insidious as to raise the presumption that any venire person exposed to it was rendered incapable of giving Petitioner a fair trial.[7]

Petitioner failed to demonstrate that the First DCA's adjudication of his claim was contrary to or an unreasonable application of clearly established federal law.  Therefore, he is not entitled to federal habeas relief on Ground Nine.

J.      Ground Ten:  "The trial court lacked jurisdiction to convict the Petitioner for both Counts One and Two in this case where the 180 days of time limitation expired in accordance with Article III(a) of the Federal Interstate Agreement on Detainer [sic] Act, in violation of the Petitioner's Fifth, Sixth, and Fourteenth Amendment rights of the United States Constitution."

Petitioner contends the trial court lacked jurisdiction to try and convict him because he was not brought to trial within the 180-day window provided in Article III(a) of the IADA (ECF No. 1 at 35–36).

Respondent argues that the Supreme Court has expressly held that this argument is not cognizable in a § 2254 proceeding (ECF No. 10 at 24).  Respondent relies upon Reed v. Farley, 512 U.S. 339 (1994), in which the Court held that the state court's failure to observe the 120-day rule of IADA Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement.

---

[6] Sheriff Morgan was not a representative of the State of Florida or the State Attorney's Office.  Furthermore, there is no indication that the Escambia County Sheriff's Office had any role in investigating the case, or that any of the trial witnesses were representatives of the Escambia County Sheriff's Office.  Officer Huhn was employed by the Pensacola Police Department, not the Escambia County Sheriff's Office.

[7] To the extent Petitioner argues that the letter to Sheriff Morgan from three district judges of this court demonstrates actual or presumed prejudice, he reads too much into their comments.  The federal district judges noted that the potential for bias created by Sheriff Morgan's practice was "undeniable," as was the disruption to the local criminal justice system that would result if the court were unable to seat fair and impartial juries to hear these trials.  The judges opined that even if no actual bias resulted, the appearance of bias created by the practice was "concerning."

Petitioner presented this claim as Argument II on direct appeal (*see* Ex. F at 7–10). The First DCA affirmed the judgment of conviction without discussion of any of the claims raised by Petitioner (Ex. G).

The IADA is a compact among forty-eight States, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. *See* <u>Carchman v. Nash</u>, 473 U.S. 716, 719, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985). The IADA was drafted in 1956 by the Council of State Governments and was adopted in 1973 by the State of Florida, where it is now codified as Fla. Stat. § 941.45, *et seq.*. The IADA is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction. *See* <u>Carchman</u>, 473 U.S. at 719 (citing <u>Cuyler v. Adams</u>, 449 U.S. 433, 438–42, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981)). The purpose of the IADA is "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." *Id.* at 720 (citing Art. I of IADA).

To achieve this purpose, Art. III of the IADA establishes a procedure by which a prisoner incarcerated in one party State (the sending State) may demand the speedy disposition of "any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner" by another party State (the receiving State). <u>Carchman</u>, 473 U.S. at 720. Specifically, Art. III requires the warden to inform the prisoner that a detainer has been lodged against him and that he may request final disposition of the indictment, information, or complaint upon which the detainer is based. If the prisoner makes such a request, the warden must forward it, together with a certificate providing certain information about the prisoner's terms of confinement, to the appropriate prosecuting official and court of the receiving State. *Id.* at 721. The authorities in the receiving State then must bring the prisoner to trial within 180 days, absent good cause shown, or the court must dismiss the indictment, information, or complaint with prejudice, and the detainer will cease to be of any force or effect. *Id.* The 180-day time period does not commence until the prisoner's disposition request has actually been delivered to the court and prosecutor of the jurisdiction that lodged the detainer against him. *See* <u>Fex v. Michigan</u>, 507 U.S. 43, 52, 113 S. Ct. 1085, 122 L. Ed. 2d 406 (1993).

Here, there is no evidence that Florida officials lodged a detainer against Petitioner for an untried indictment, information or complaint in Escambia County Case No. 2009-CF-3426, the case which is the subject of this federal habeas action. Indeed, Petitioner concedes in Ground Four that the charges in this case were <u>not</u> the subject of the detainers lodged against him, and even if they were, he has not shown that the detainers were lodged pursuant to an untried indictment, information or complaint. *See* <u>United States v. Bottoms</u>, 755 F.2d 1349, 1349–50 (9th Cir. 1985) (speedy trial provision of IADA did not apply to defendant where detainer filed against him while he was in state custody was based on an arrest warrant, not an untried indictment, information or complaint); <u>Churchwell v. State</u>, 44 So. 3d 645 (Fla. 2d DCA 2010) (same); <u>Taylor</u>, 582 So. 2d 152 (Fla. 4th DCA 1991) (same).

Petitioner has failed to demonstrate that the First DCA's adjudication of his IADA claim was contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to relief on Ground Ten.

## IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Julie L. Jones is substituted for Michael Crews as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 12<u>th</u> day of November 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**